IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SHEGLON ELCOCK,                    :

     Petitioner,                 :

vs.                                :   CIVIL ACTION 06-00534-KD-B

DAVID O. STREIFF, *et al.*,        :

     Respondents.                :

## REPORT AND RECOMMENDATION

This is an action brought pursuant to 28 U.S.C § 2241 by Sheglon Elcock,[1] a citizen and native of Guyana, who is being detained by the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). (Doc. 1). This action has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C § 636(b)(1)(B) and Local Rule 72.1(c) and is now ready for consideration. The record is adequate to determine Elcock's claims; thus, no evidentiary hearing is required. Following a careful review of the record, it is recommended that the instant petition be dismissed, without prejudice.

## FINDINGS OF FACT

1.   Elcock is a native and citizen of Guyana, who entered the United States in 1982 as a lawful permanent resident. (Docs. 1; 13, Ex. 3).

---

[1]Petitioner also employs the alias "Garvin Webster." (Doc. 13, Ex. 1, Ex. 3).

2.    On or about September 21, 1999, Elcock was convicted in New York, under the alias of "Garvin Webster" for the criminal sale of a controlled substance and criminal possession of a controlled substance.  He was sentenced, as a second felony offender, to a term of imprisonment of five (5) to ten (10) years in the custody of the New York State Department of Corrections. (Doc. 13, Ex. 3).

3.    On July 15, 2004, a Notice to Appear was issued by ICE charging Elcock as removable pursuant to § 237(a)(2)(B)(I), as a controlled substance violator, and § 237(a)(2)(A)(iii), as an aggravated felon, of the Immigration and Nationality Act.  On that same date, Petitioner was remanded to ICE custody from New York State Department of Corrections.  (Id.)

4.    On September 17, 2004, an Immigration Judge ordered Elcock removed from the United States to Guyana. (Id.)   Elcock filed an appeal of the removal order with the Board of Immigration Appeals, which affirmed the removal order on March 3, 2005. (Id.)   On May, 9, 2005, the Board of Immigration Appeals denied Elcock's motion to reconsider the order of removal, and the order of removal became final. (Id.)

5.    On March 18, 2005, the Guyanese government issued travel documents for Elcock, and he was scheduled for removal on April 20, 2005.  The Government contends, and Elcock has not denied, that he refused to cooperate so as to allow his repatriation to Guyana. (Id.)

2

6.    On May 16, 2005, Elcock filed a petition for writ of habeas corpus and a motion to stay removal in the United States District Court for the Western District of New York, which was subsequently transferred to the Second Circuit Court of Appeals. (Doc. 13, Ex. 4).   On March 8, 2006, the Court of Appeals dismissed Elcock's appeal of the Board of Immigration Appeal's decision. (Doc. 13, Ex. 5)[2].

7.    On March 20, 2006, Elcock filed a second habeas petition and motion for stay of removal in the District Court for the Western District of New York. (Doc. 13, Ex. 8). The petition was transferred to the Second Circuit Court of Appeals, which dismissed the appeal as untimely on February 12, 2007. (See Elcock v. Gonzales 06-1743-ag, U.S. Court of Appeals for the Second Circuit).

8.    Elcock filed another appeal and request for stay of removal with the Second Circuit Court of Appeals in September 2007.  His appeal and stay request are still pending before that Court. (Doc. 23, Ex. 1).

9.    Petitioner filed the instant petition for writ of habeas corpus on September 7, 2006 (Doc. 1), seeking his immediate release from ICE custody on the ground that his continued detention violates

---

[2]On June 24, 2005, and June 26, 2006, ICE conducted a review of Elcock's detention and determined that based on the nature of Elcock's criminal convictions, Elcock should continue his detention in ICE custody, and that Elcock had failed to establish that there was no significant likelihood of his deportation in the reasonably foreseeable future. (Doc. 13, Ex. 3).

his rights under the Due Process Clause of the Fifth Amendment.(Doc. 1). Petitioner asserts that he is entitled to exhaust all of his legal options and that his continued detention, under the mandatory detention provisions, without an individualized bond hearing, violates his procedural and substantive rights.

10. Respondents assert that Elcock remains detained because of his own actions. (Doc. 13). More specifically, Respondents assert that although travel documents were secured for Elcock, he failed to cooperate and has filed numerous petitions and motions, including motions to stay the removal order and has thereby effectively prevented his removal to Guyana. Respondents further assert that the removal period has not yet commenced due to Elcock's various legal filings and that since travel documents were previously secured from Guyana, there is no reason to believe that Elcock will not be removed in the reasonably foreseeable future.

## CONCLUSIONS OF LAW

As a preliminary matter, the undersigned finds that this Court has jurisdiction over Petitioner's case notwithstanding the fact that he has been transferred out of this District[3]. The record reflects that at the time Petitioner filed his petition, he was being detained at the Perry County Correctional Center, which is located in this District. (Doc. 1). The proper defendant in a

---

[3]Elcock filed a Notice of Change of address which reflects that he was transferred to Batavia, New York in April 2007. (Doc. 18).

habeas case is generally the petitioner's "immediate custodian," that is, the warden of the facility in which the petitioner is incarcerated or detained at the time he files the habeas petition. Rumsfeld v. Padilla, 542 U.S. 426, 439, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004).  Based upon a reading of the Supreme Court's Padilla decision, it does not appear that Padilla alters the well-settled rule that if a district court properly acquires jurisdiction when the case is filed, then the petitioner's subsequent removal to another judicial district does not destroy the court's jurisdiction. 542 U.S. at 440, 124 S. Ct. at 2721, 159 L. Ed. 2d at 531, *relying on* Ex parte Endo, 323 U.S. 283, 306, 65 S. Ct. 208, 89 L. Ed. 243 (1944).  Thus, jurisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. Tang v. Gonzales, 2006 U.S. Dist. LEXIS 93572 (N.D. Fla. 2006)(citing Mujahid v. Daniels, 413 F.3d 991, 994 (9th Cir. 2005)).

In Tang, the court observed that the petitioner had been previously detained in three other facilities before being transferred to that district and that the petitioner's case was a good example of the difficulty that would be caused if jurisdiction shifted whenever a petitioner was transferred.  According to the court in Tang, "[i]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case

5

would ever be decided." <u>Id.</u> at *6.  In this case, the evidence is undisputed that Petitioner was incarcerated within this District at the time he filed his § 2241 petition. (Doc. 1).  Accordingly, the undersigned finds that this Court has jurisdiction over Petitioner's case notwithstanding the fact that he was transferred out of this District following the filing of his petition.

As noted supra, Elcock is challenging his continued detention pending removal.  Specifically, Elcock asserts that his mandatory detention, since 2004, without an individualized bail hearing violates his rights.  8 U.S.C. § 1226(c) provides, in pertinent part, that:

> The Attorney General shall take into custody an alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227 (a)(2)(A)(ii), (A)(iii), (B), ( C), or (D) of this title,
>
> (C) is deportable under section 1227 (a)(2)(A)(I) of this title on the basis of an offense for which the alien has been [sentenced] to a term of imprisonment of at least one year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).  "Thus, the Attorney General is directed by that statute to detain 'deportable' criminal aliens during the

6

period following the expiration of their original sentences but prior to a decision regarding their removal." De La Teja v. United States, 321 F.3d 1357, 1362 (11th Cir. 2003); 8 U.S.C. § 1226(c)(1). The Attorney General has discretion to release an alien, however, but only if the alien or an immediate family member is participating in the Federal Witness Protection Program, and the alien "satisfies the Attorney General that [he or she] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 321 F.3d at 1362; 8 U.S.C. § 1226(c)(2).

In this case, the record reflects, and Elcock does not contest that he was convicted of a drug trafficking offense, which qualifies as an aggravated felony under the statute.  As a result, upon the completion of his sentence in 2004, 8 U.S.C. § 1226(c)(1) required that he be placed in ICE custody during the pre-removal period.  The Immigration Judge ordered Elcock removed from the United States to Guyana on September 17, 2004, and this decision was affirmed by the Board of Immigration Appeals on March 3, 2005.  On May 9, 2005, the Board of Immigration Appeals denied Elcock's motion for reconsideration, and the order of removal became final.  Once the removal order became final, Elcock was no longer being detained pursuant to § 1226(c), which governs detention prior to a final removal order.  As of May 9, 2005, when the removal order became final, INA § 241(a), 8 U.S.C. § 1231(a) came into play.  See De La Teja, 321 F.3d at 1363 (discussing that once a final removal order

7

was entered, De La Teja was no longer being detained pursuant to §
1226 (c), which governs detention prior to a final removal order.
Now, he was being detained pursuant to INA § 241(a), 8 U.S.C. §
1231(a), which controls the detention and removal of an alien
subject to a final order of removal).

Section 1231(a) provides that ordinarily "when an alien is
ordered removed, the Attorney General shall remove the alien from
the United States within a period of 90 days." 8 U.S.C. §
1231(a)(1)(A).   In interpreting § 1231[4], the Supreme Court, in

_____

[4] 8 U.S.C. § 1231, entitled "Detention and Removal of Aliens to be
removed," states in pertinent part:

    (a) Detention, release, and removal of aliens ordered removed

       (1) Removal period

       (A) In general

           Except as otherwise provided in this section, when an
           alien is ordered removed, the Attorney General shall
           remove the alien from the United States within a
           period of 90 days (in this section referred to as the
           "removal period").

       (B) Beginning of period

           The removal period begins on the latest of the
           following:

           (I) the date the order of removal becomes
               administratively final.

           (ii) If the removal order is judicially reviewed and
               if a court orders a stay of the removal of the
               alien, the date of the court's final Order.

           (iii) If the alien is detained or confined (except
               under an Immigration process), the date the
               alien is released from detention or confinement.

       (C) Suspension of period

           The removal period shall be extended beyond a period
           of 90 days and the alien may remain in detention
           during such extended period if the alien fails or
           refuses to make timely application in good faith

<u>Zadvydas v. Davis</u>, held that the statute "limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention." 533 U.S. 678, 689 (2001).  The Court went on to hold that "six months [was] a presumptively reasonable period to detain a removable alien awaiting deportation" pursuant to § 1231. <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1051 (11th Cir. 2002).

Relying on the <u>Zadvydas</u> decision, the Eleventh Circuit Court of Appeals, in <u>Akinwale</u>, held that the six-month period "must have expired at the time [Petitioner's] petition was filed in order to state a claim under <u>Zadvydas</u>." <u>Akinwale</u>, 287 F.3d at 1052.  The <u>Akinwale</u> Court also noted that the six-month period could be interrupted by a petitioner's motion for a stay of deportation or removal. <u>See id.</u>, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under <u>Zadvydas</u> by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court.  The stay was granted on January 10, 2000.... Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000.  Thus, Akinwale, unlike the aliens in <u>Zadvyas</u>, chose to simultaneously challenge issues related to his removal order and his post-removal period detention.... Therefore, Akinwale did not

for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231

have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months."); 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.").

In the case at hand, Respondents assert, and Elcock does not deny, that his removal has been repeatedly stayed as a result of the numerous petitions and motions he has filed in various courts, including his current appeal which is pending before the Second Circuit Court of Appeals. A review of the docket for Elcock's current appeal before the Second Circuit Court of Appeals reflects that he has filed a motion to stay the removal proceedings; however, it remains pending. (Doc. 23, Ex. 1). The undersigned takes judicial notice of Judge William Cassady's finding in <u>Guentanque v. Bateman</u>, CA No. 06-526-KD-C, Southern District of Alabama, Report and Recommendation, p. 5, Oct. 19, 2006, that "[p]ursuant to internal procedures established and followed by the Second Circuit Court of Appeals since September of 1995, aliens will not be deported while a stay motion is pending[5]. In light of the fact that

---

[5] Judge Cassady cited to an internal memorandum for chambers and staff penned by George Lange III, the Clerk of Court for the Second Circuit Court of Appeals. ("Effective immediately...the U.S. Attorney will instruct INS not to

Elcock's appeal before the Second Circuit is still pending, and his removal has been stayed pending resolution of his appeal, Elcock cannot prove that "there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zavydas</u>, 533 U.S. at 701. This is particularly true where Respondents have demonstrated that travel documents were previously obtained for Elcock from his native Guyana; however, he blocked efforts to remove him through his series of court filings. Accordingly, the undersigned finds that Elcock has failed to establish that his continued detention is improper.

<u>CONCLUSION</u>

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Elcock's petition under 28 U.S.C. § 2241.

The attached sheet contains important information regarding objections to the report and recommendation of the undersigned magistrate judge.

Done this the **21st** day of **February**, **2008**.

       **/s/ SONJA F. BIVINS**
       **UNITED STATES MAGISTRATE JUDGE**

---

deport or return aliens in any case where the Clerk's office has informed the U.S. Attorney that a stay motion has been filed, until and unless the stay is denied.... The U.S. Attorney will not instruct INS to refrain from steps preliminary to deportation. The U.S. Attorney for the Southern District of New York represents INS in all appeals from BIA rulings on deportation orders issued through the Circuit. Accordingly, the new policy provides comprehensive protection from deportation while those motions for stay are pending.").

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   <u>**Objection**</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>**Opposing party's response to the objection.**</u>  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   <u>**Transcript (applicable where proceedings tape recorded)**</u>. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.